**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON CHISM, *et al.* | § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-16-3343 |
| CONTINENTAL COLLECTION AGENCY, LTD, *et al.* | § § § | |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss, stay, or transfer filed by defendants Continental Collection Agency, Ltd. and Nathan Twedt ("Defendants"). Dkts. 15, 15-1. After conducting jurisdictional discovery (Dkt. 23), plaintiffs Jason and Stacy Chism responded. Dkt. 33. Defendants replied. Dkt. 36. On November 21, 2017, the court heard oral arguments from both parties. *See* Dkts. 38, 41. Having considered the motion, response, reply, the parties' oral arguments, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

This is a wrongful debt collection case. Dkt. 1. From 2007 to 2011, the Chisms lived in Colorado where they rented a home from Karla Bennett. *Id.* at 5. Thereafter, the Chisms returned to their home in Porter, Texas. *Id.* at 5, 9. Defendants allege that the Chisms failed to pay Bennett some rent payments and damages (the "debt"). *Id.* at 1, 5. In 2011, Bennett assigned that debt to Continental. *Id.* at 6, 24. Defendants learned that the Chisms were Texas residents. Dkt. 33 at 8.

For several years, Defendants sent more than a dozen letters to the Chisms' home in Texas try to collect that debt. Dkts. 1 at 8; 33 at 7. Defendants called the Chisms' Texas-based home phone number at least three times. Dkt. 33 at 8. Defendants stipulated that Continental has "mailed

and or faxed thousands of letters to persons with addresses in the State of Texas and/or phone numbers with area codes located in Texas as part of its attempts to collect debts." Dkt. 26 at 9. Defendants also stipulated that Continental has "attempted to collect debts by placing thousands of telephone calls to area codes located in Texas." *Id.* at 10.

The Chisms allege that Defendants have a policy and practice of serving and filing computer-generated, mass-produced lawsuits against consumers that falsely imply that a licensed attorney engaged in meaningful review before effectuating service. Dkt. 1 at 11. Defendants stipulated that "[s]ince 2011, Continental has regularly filed lawsuits against persons with addresses in the State of Texas . . . ." Dkt. 26 at 9.

Defendants sued the Chisms in a Colorado state court. Dkt. 1 at 9. On October 21, 2016, Defendants had Stacy Chism served at her home with the summons and complaint by a Texas deputy constable. *Id.* The Chisms counterclaimed for violations of the Colorado Fair Debt Collection Practices Act (CFDCPA), Colo. Rev. Stat. Ann. § 5-6-113 (West 2017). Dkt. 41 at 10. Then, the Colorado state court entered a default judgment against the Chisms. *Id.* Thereafter, the court set aside the default and the Chisms dropped their counterclaims. *Id.*

The Chisms brought the instant lawsuit against Defendants (and unknown defendants) for violating their rights (and the rights of unknown class members) under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and under the Texas Debt Collection Act (TDCA), Tex. Fin. Code Ann. § 392.301, *et seq.*[1] Dkt. 1 at 1, 5–6, 16–17. Specifically, the Chisms allege that Defendants' attempts to collect the debt from them—through letters, phone calls, and

---

[1]The parties refer to the Texas statute regulating debt collectors as the Texas Debt Collection Practices Act. *See e.g.*, Dkts. 1 at 1, 15-1 at 7. Because Texas courts refer to the statute as the Texas Debt Collection Act, the court will as well. *See e.g.*, *Genender v. Kirkwood*, 506 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

service of process—violated multiple provisions of both the federal and Texas debt collection statutes.[2] *Id.*

In the instant motion, Defendants move to (1) dismiss for lack of personal jurisdiction or because exercise of such jurisdiction is constitutionally unreasonable; (2) dismiss or stay under *Colorado River*; (3) dismiss for a violation of the dormant Commerce Clause; or (4) transfer to Colorado. Dkt. 15-1.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

A court must dismiss an action when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing a prima facie showing that the defendant is subject to personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *see also Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). "Proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir.

---

[2]For example, the Chisms allege that Defendants' letters contained false, deceptive, or misleading information about the character, amount, or legal status of the alleged debt. *Id.* at 6. The Chisms also allege that Defendants used unfair or unconscionable means to collect to try to collect the debt. Dkt. 1 at 16–17. Further, the Chisms allege that the Defendants tried to collect a debt without the requisite Texas surety bond. *Id.* at 17–18.

2010). This two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868 (1984)). To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994)).

Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co*, 253 F.3d 865, 867(5th Cir. 2001). The parties only dispute whether specific jurisdiction exists. Dkt. 41 at 2–3, 5–6.

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846 (2011) (internal citations omitted). Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of the defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S.Ct. 1773, 1779 (2017). If the nonresident defendant's contact are singular or sporadic, specific jurisdiction is proper "only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).

"A court considers two issues in deciding whether a defendant's suit-related conduct creates a sufficient relationship with the forum state." *Havel v. Honda Motor Europe Ltd.*, Civil Action No. H-13-1291, 2014 WL 4967229, at *7 (S.D. Tex. Sep. 30, 2014) (Rosenthal, J.) (citing *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)). "First, the relationship must arise out of contacts that the defendant himself creates with the forum State." *Walden*, 134 S.Ct. at 1122. "Second, the minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

Once minimum contacts have been established, the defendant has the burden to establish a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *In re Chinese Manufactured Drywall Products Liab. Litigation*, 742 F.3d 576, 592 (5th Cir. 2014); *see also Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026 (1987). "When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guidry*, 188 F.3d at 630.

B. **Analysis**

Defendants move to dismiss the Chisms' complaint for lack of personal jurisdiction. Dkt. 15-1 at 15. Defendants challenge specific jurisdiction by arguing: (1) that they lack sufficient contacts with Texas; and (2) even if the Chisms could establish personal jurisdiction, it would be constitutionally unreasonable for the court to exercise personal jurisdiction. *Id.* at 16.

1. **Sufficient contacts with Texas**

In *Bristol-Myers*, the Supreme Court held that California courts could not claim specific jurisdiction over nonresidents' claims in a pharmaceutical products liability action when those nonresidents did not claim to have suffered harm in California. 137 S.Ct. at 1781. Citing *Walden*, the Supreme Court criticized California's Supreme Court for finding specific jurisdiction "without identifying any adequate link between the State and the nonresidents' claims." *Id.* The Court explained that "the mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the drug] in California–and allegedly sustained the same injuries as did the nonresidents–does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Rather, "[w]hat [was] needed–and what [was] missing here–[was] a connection between the forum and the specific claims at issue." *Id.*

In *Walden*, Nevada plaintiffs sued a nonresident defendant for allegedly unlawfully searching them while preparing to board a plane in Georgia. 134 S.Ct., at 1123. *Walden* held that "the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and suffered foreseeable harm in Nevada [b]ecause the relevant conduct occurred entirely in Georgia." *Id.* There, the Court focused on the "relevant conduct" as occurring entirely in Georgia. *Id.* It did not matter that "the conduct affected plaintiffs with connections to the forum state." *Id.*

Here, Defendants argue that the Chisms' move to Texas was a "mere fortuity" and a "unilateral activity of the [Chisms'] themselves . . . that led Defendants to have the contacts on which the [Chisms'] rely." Dkt. 15-1. at 17 (citing *Walden*, 134 S.Ct. at 1122). In short, Defendants assert that "[w]hen Plaintiffs vacated their apartment without paying their final months' rent and other damages . . . Defendants had no choice but to contact Plaintiffs in Texas." Dkt. 15-1 at 17; *see also* Dkt. 41 at 21 ("The only reason that attempted contacts were made to the Plaintiffs here in Texas is because they left Colorado and came to Texas."). Defendants also argue that their debt collection communications with the Chisms do not count as contacts with Texas. Dkt. 15-1 at 17.

Next, Defendants rely on *Monkton Insurance Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) to challenge specific jurisdiction on the grounds that they do not conduct business in Texas, that the underlying transaction was entered into in Colorado, and that transaction contemplated performance in Colorado. Dkt. 15-1 at 17–18. *Monkton* held that a defendant bank was not subject to specific jurisdiction when a third-party plaintiff (and not the bank) sent contracts to Texas, and when wire transfers and communications were initiated by the third-party plaintiff, not the bank. 768 F.3d at 433 (relying on *Walden*, 134 S.Ct. at 1122).

Finally, Defendants argue that the Chisms' location in Texas is "happenstance" and thus not a basis for personal jurisdiction. Dkt. 15-1 at 18 (citing *Searcy v. Parex Res., Inc.,* 496 S.W.3d 58, 68 (Tex. 2016)). Defendants argue that they have purposefully avoided profiting from Texas's laws or jurisdiction in Texas "by building and working for a business that collects exclusively debts originating in Colorado." Dkt. 15-1. at 18.

The Chisms respond by pointing out that Defendants contacted them through the mail, over the phone, and had them served with process in Texas. Dkt. 33 at 20. Further, the Chisms argue that

7

Defendants do not dispute those contacts. *Id.* (citing Dkt. 15-1 at 5–6 ("Continental determined that [the Chisms] were living in Texas and attempted to contact them to collect their debt . . . over the course of several years and occurred by mail and telephone . . . .")).

The Chisms also argue that the debt-collection communications Defendants sent into Texas are sufficient contacts to establish personal jurisdiction. Dkt. 33 at 19–20. In support, the Chisms cite several cases such as *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d. Cir. 2015) and *Fagan v. Lawrence Nathan Associates, Inc.*, 957 F.Supp.2d 784,792 (E.D. La. 2013).

In *Eades,* a Pennsylvania defendant had sufficient contacts with New York for purposes of New York's test for personal jurisdiction when that defendant mailed one debt collection notice, made one debt collection phone call, and mailed a summons and complaint in debt collection suit. 799 F.3d at 169. Defendants distinguish *Eades* as irrelevant because it deals with New York's statutory test for personal jurisdiction and because it addresses general jurisdiction. Dkt. 36 at 8.

In *Fagan*, the plaintiff brought an FDCPA action against a debt collector for the way it tried to collect a debt in Louisiana when that debt was incurred in Nevada. 957 F.Supp.2d at 792. *Fagan* held that the debt-collector "purposefully availed itself of the benefits of the forum state by attempting to collect a debt from, and ultimately reporting information about, a resident of Louisiana, which caused injury or damage in this state" when it (1) mailed two debt-collection letters to plaintiff in Louisiana and (2) reported the alleged debt to two credit bureaus. *Id.* Defendants distinguish *Fagan* as "highly suspect" because it precedes *Walden* and because it relies "entirely on contacts between the defendant and the plaintiff with no regard for the existence of any other contacts between the defendant and the forum state." Dkt. 36 at 7.

The court has specific jurisdiction over the Defendants. *See Bristol-Myers*, 137 S.Ct. at 1781; *see also Walden*, 134 S.Ct. at 1123. *Bristol-Myers* instructs that the exercise of specific jurisdiction requires "a connection between the forum and the specific claims at issue." 137 S.Ct. at 1781. Here, that connection exists.

Defendants' conduct that gave rise to the Chisms' claims arose out of contacts that Defendants created with Texas. *See Walden,* 134 S.Ct. at 1122. Namely, the Defendants: (1) sent twelve letters to the Chisms' home in Texas; (2) called the Chisms at their home in Texas three times; and (3) hired a Texas deputy constable to serve Stacy Chism at her home in Texas. Dkts. 1 at 8–9, 33 at 7–8. Although Defendants assert that they "had no choice but to contact Plaintiffs in Texas," Defendants made that choice. *See* Dkt. 15-1 at 17. Indeed, they did so by contacting the Chisms in Texas at least sixteen different times. Dkts. 1 at 8–9 (twelve letters, three phone calls), 33 at 7–8 (service of process).

The Chisms sued Defendants for violating their rights under federal and state debt collection statutes. Dkt. 1 at 5. Those statutes regulate how debt collectors can communicate with consumers. *See Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997) (quoting 15 U.S.C. § 1692(a)) (Congress enacted FDCPA to eliminate abusive debt collection practices by debt collectors); *see also* Tex. Fin. Code Ann. §§ 392.301–306 (prohibited debt collection methods). The Chisms allege that Defendants violated the debt collection statutes by: (1) sending letters to their home in Texas; (2) calling them at their home in Texas; and (3) having them served with process at their home in Texas. Dkt. 1 at 5. Thus, the Chisms allege that the claim-triggering violations occurred in Texas. Those allegations satisfy *Bristol-Myers*. 137 S.Ct. at 1781. As a result, the court has specific jurisdiction over the Defendants.

## 2. Constitutionally reasonable exercise of personal jurisdiction

Defendants argue that the *Asahi* factors make the exercise of personal jurisdiction constitutionally unreasonable.[3] Dkt. 15-1 at 19. Defendants' reply does not respond to the Chisms' arguments. *See* Dkt. 36.

### a. *Burden on Defendants*

Defendants argue that this case would impose a heavy burden on them because: (1) it would force them to travel to Texas; (2) require them to obtain local counsel in Texas; and (3) prosecute the lawsuit they filed in Colorado and defend this suit in Texas "where there need be only one." Dkt.15-1 at 19. The Chisms argue that the burden placed on Defendants is justified because Defendants intentionally targeted them in Texas. Dkt. 33 at 24.

### b. *Texas's interests*

Defendants concede that "Texas has an interest in protecting its citizens" but asserts that "Plaintiffs' interests are equally protected in Colorado" because the Chisms: (1) asserted numerous defenses to the Colorado lawsuit and (2) counterclaimed under the CFDCPA. *Id.* Defendants also assert that "there is no reason [the Chisms] could not have also counterclaimed pursuant to the FDCPA or, subject to Defendants' constitutional defenses, pursuant to Texas law as well." *Id.* Accordingly, "Texas has no interest at stake here" that would make exercise of jurisdiction appropriate. *Id.* The Chisms argue that Texas has a strong interest in protecting its citizens and enforcing its consumer-protection laws like the TDCA. Dkt. 33 at 23.

---

[3]Defendants did not discuss the fifth factor (the shared interest of the several states in furthering fundamental substantive social policies). *See Guidry*, 188 F.3d at 630; *see also* Dkt. 15-1 at 19.

### c. *The Chisms' interest in obtaining relief*

Defendants argue that the exact same relief is available to the Chisms in both Texas and Colorado. Dkt. 15-1 at 19 ("[T]here is no difference in the relief available in Colorado versus Texas."). Defendants also argue that their twenty thousand dollar bond in Colorado "actually provides greater protection for [the Chisms'] interest . . . than a lesser Texas bond would have provided." *Id.* The Chisms argue that Texas provides them and their putative class members "the ability to participate in the litigation at a greater level." Dkt. 33 at 24.

### d. *Judicial system's interest in obtaining the most efficient resolution of controversies*

Defendants argue that Colorado is the most efficient place to resolve this controversy because: (1) the instant case duplicates the Chisms' defenses and counterclaims in the Colorado lawsuit and (2) nearly all relevant evidence is located in Colorado. Dkt. 15-1 at 24. The Chisms disagree, especially as it comes to unnamed class members. Dkt. 33 at 24.

Considering these factors collectively, Defendants failed to establish a compelling case for why other considerations would render this court's exercise of jurisdiction unreasonable. *See In re Chinese Manufactured Drywall*, 742 F.3d at 592. The Fifth Circuit has explained that "it is rare to say that the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 750, 753 (5th Cir. 2009).

A recent unpublished Fifth Circuit case illustrates one of those rare instances. *See Bustos v. Lennon*, 538 Fed.Appx. 565, 568 (5th Cir. 2013) (per curiam). *Bustos* denied jurisdiction because "the facts . . .[we]re overwhelming." *Id.* at 568. That case involved a decade-long receivership in an Oregon federal district court. *Id.* at 566. After the Oregon-based litigation had been going on for some time, the plaintiff sued the court-appointed receiver, in the Western District of Texas, for torts

that allegedly arose in connection with the receivership. *Id.* The court noted that "'it appears that, dissatisfied with the direction and/or speed at which the Oregon wheels of justice were turning, plaintiffs filed suit in this Court in an effort to redirect their claims towards a more favorable outcome and possibly accelerate resolution of these claims.'" *Id.* at 568.

Unlike *Bustos*, these facts are not overwhelming. *See id.* at 568. And, unlike in *Bustos*, no facts indicate that the Chisms filed this suit here to seek a more favorable outcome than in the Colorado suit. *Compare id. with* Dkt. 41 at 11 ("[N]o matter what happens in . . .this court, the outcome in the Colorado court will be unaffected."). Accordingly, the Defendants have failed to show why the court's exercise of personal jurisdiction would be unfair. *See McFadin*, 587 F.3d at 753. Therefore, the court finds that its exercise of jurisdiction is not constitutionally unreasonable. Thus, Defendants motion to dismiss for lack of personal jurisdiction is also DENIED on this ground.

### III. MOTION TO DISMISS OR STAY UNDER *COLORADO RIVER*

#### A. Applicable Law

"*Colorado River* abstention is a narrow exception to a federal court's virtually unflagging duty to adjudicate a controversy that is properly before it." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (discussing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236 (1976)). Under *Colorado River*, "a federal court may abstain only under exceptional circumstances." *Id.* (internal citation omitted). The Fifth Circuit instructs that a decision to abstain "must be based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*

Before applying the *Colorado River* factors, the court must determine whether a state proceeding and a federal action are sufficiently parallel to make consideration of abstention proper.

*Id.* Parallel actions are those "involving the same parties and the same issues." *Id.* The court should look to the named parties and to the substance of the claims asserted in the two proceedings. *Id.*

If the court determines the two proceedings are parallel, then the court must balance six factors on a case-by-case basis to determine whether exception circumstances warrant abstention. *Id.* at 798. Those factors are: (1) assumption by either court of jurisdiction over a res; (2) relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Id.* Courts balance those factors carefully with "the balance heavily weighted in favor of exercise of jurisdiction." *Id.*

**B.  Analysis**

In *Lucien*, the Fifth Circuit found that a state court case and a federal action were parallel. 756 F.3d at 790. There, a local congregation filed suit against its national church in a city court to evict several of the latter's officeholders who had changed the former's locks. *Id.* Then, the national church filed suit against the local congregation in a federal district court seeking a declaratory judgment as to the property rights. *Id.* *Lucien* determined that although the named parties in both suits differed slightly, "the interests of all of the named parties in either action align[ed] undisputedly, either with [the local congregation's] interest or with [the national church's]." *Id.* at 798. *Lucien* further found that the "eviction proceeding will necessarily dispose of all claims asserted by [the national church] in the federal action" because the eviction proceeding would require the local congregation to prove title and occupancy—the only issues before the federal court. *Id.*

13

Defendants argue that *Colorado River* compels this court to defer to an earlier filed state-court action by dismissing or staying the instant case. Dkt. 15-1 at 20. Defendants argue that the Colorado lawsuit and the instant case are parallel. *Id.* at 21. Specifically, Defendants assert that "the parties are nearly identical" except that Twedt is Continental's attorney in the Colorado suit instead of a named party. *Id.*

Defendants also argue that the substance of the claims in both suits "are also essentially the same" because the Chisms assert a CFDCPA counterclaim in the Colorado lawsuit. *Id.* "That means both cases relate to the same underlying debt and Defendants' efforts to collect that debt." *Id.* Defendants' reply asserts that the Chisms "counterclaimed in [the Colorado suit] with the same unfair debt collection allegations, then voluntarily dismissed those claims after Defendants filed their Motion in [the instant case]." Dkt. 36 at 8.

The Chisms argue that the two cases are not parallel and thus *Colorado River* abstention is inapplicable. Dkts. 33 at 25; 41 at 9–12. Specifically, the Chisms argue that the Colorado litigation will not dispose of all the claims in the instant case. *Id.* Instead, the Chisms argue, the two cases are distinct because the Colorado case is a dispute over unpaid rent, dealing only with liability under a purported lease. Dkts. 33 at 25, 41 at 10–11. On the other hand, the Chisms argue, the instant case addresses the Defendants' conduct while attempting to collect a debt alleged to arise from that lease. Dkt. 33 at 25.

Here, no parallelism exists between the Colorado case and the instant lawsuit. *See Lucien*, 756 F.3d at 797. First, this case involves an additional defendant: Twedt. Dkt. 15-1 at 21. Second, the two cases do not involve the same issue because the substance of the claims asserted differs. *See Lucien*, 756 F.3d at 797. In the Colorado case, Defendants claim the Chisms are liable for contract damages for unpaid rent. Dkt. 15-1 at 21. Here, the Chisms claim that Defendants are liable for

statutory damages arising from their conduct in trying to collect that debt. Dkts. 33 at 25; 41 at 9–12. Unlike in *Lucien*, even if the Defendants win the Colorado case, the Chisms will still be able to pursue the claims they assert in this federal action. *Compare* 756 F.3d at 798, *with* Dkt. 41 at 11–12. Thus, because the Colorado case will not dispose of all the issues in this case, the cases are not sufficiently parallel. Accordingly, the court need not analyze the *Colorado River* factors. Therefore, Defendants' motion to dismiss or stay the case under *Colorado River* is DENIED.

### IV. MOTION TO DISMISS UNDER THE DORMANT COMMERCE CLAUSE

Defendants argue that the Chisms' TDCA claim violates the Federal Constitution's dormant Commerce Clause as applied to them. Dkt. 15-1 at 12. A violation of that Clause can occur when one state tries to extraterritorially regulate another state's commercial entities. *See BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 572, 116 S.Ct. 1589 (1996). "A state's regulation of the entities conducting commerce within its borders, even where those entities are located out-of-state, however, generally complies with the federal Constitution's limitations." *Bentson v. Chyma*, Civil Action No. 4:15-CV-523, 2017 WL 3431501, *1, *3 (E.D. Tex. Aug. 10, 2017) (rejecting argument that TDCA violated dormant Commerce Clause because defendant debt collector targeted Texas consumer by sending letters to Texas to collect debt from Texas resident). Generally, a court will uphold a state statute unless that statute imposes a burden on interstate commerce that clearly exceeds the putative local benefits of the law. *See Nat'l Solid Wast Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 501 (5th Cir. 2004) (applying the *Pike* balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844) (1970)).

Defendants argue that the TDCA burdens interstate commerce by requiring them to "post a surety bond and comply with Texas's regulations regarding debt collection." Dkt. 15-1 at 13. Defendants assert that such a burden is unfair because "Defendants are not engaged in commerce in

Texas" and "the only reason Defendants had contact with a Texas resident is because those Texas residents moved to Texas upon abandoning their debt." *Id.* Finally, Defendants argue that "if every state enacted a similar statute, entities like Continental would have to post bonds totaling half a million dollars . . .[and] track regulatory licensing regimes of all fifty states, a dramatic burden for a small business that intentionally engages in commerce only in one state." *Id.* However, the record contradicts Defendants' assertions. *See* Dkt. 26 at 10–11. And, Defendants do not adequately brief this issue. Therefore, Defendants provide an insufficient basis to grant a dismissal on this ground and thus the motion is DENIED.

## V. MOTION TO TRANSFER

Defendants moved to transfer the case to Colorado. Dkt. 15-1 at 23. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987). Furthermore, the moving party bears the burden of showing why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). In evaluating a § 1404(a) motion to transfer, the court examines (1) whether the action "might have been brought" in the transferee forum, and (2) whether there is "good cause" for transferring the action. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). Defendants did not meet that burden and appear to concede as much. Dkt. 41 at 27. Accordingly, their motion to transfer is DENIED.

## VI. Conclusion

Defendants' motion to dismiss for lack of personal jurisdiction is DENIED. Dkt. 15-1. Further, Defendants' motion to dismiss or stay under *Colorado River* is DENIED. *Id.* Defendants' motion to dismiss under the dormant Commerce Clause is also DENIED. Finally, Defendants' motion to transfer to Colorado is DENIED.

Signed at Houston, Texas on December 6, 2017.

_____
Gray H. Miller
United States District Judge